UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

BARBARA SWENSON; GERALD
SHEARON et al

      Plaintiff,

         vs.

MOBILITYLESS, LLC; GABOR
SMATKO; MONICA SMATKO JOHN
DOES I-X,

      Defendants.

Civil Action No. 3:19-cv-30168

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

### I.      INTRODUCTION

The Defendants, Gabor Smatko, Monica Smatko, Mobilityless, LLC (collectively, the "Defendants"), on behalf of themselves and the various corporate entities also named as defendants in this case, submit this memorandum in opposition to the Plaintiffs' Motion for Class Certification ("Motion"). For the reasons set forth herein, the Plaintiffs' Motion fails to satisfy the requirements of Fed. R. Civ. P. 23 and, therefore, should be denied.

### II.      STATEMENT OF FACTS

Mobilityless, LLC ("Mobilityless") operates a website which advertises the sale of a variety of products, including electric scooters, electric tricycles, electric wheelchairs, and low-temp freezers. Third Amended Complaint ("TAC"), ¶ 43. The goods sold by Mobilityless are shipped to purchasers in various states across the country. TAC, ¶ 44. Mobilityless advertises to customers through its website, including individuals in Miami, Florida; Los Angeles, California; Phoenix, Arizona; Houston, Texas; Chicago, Illinois; and New York, New York. TAC, ¶¶ 44, 59.

On or about August 27, 2019, Plaintiff Barbara Swenson ("Swenson") purchased an electric tricycle and lithium battery from Mobilityless through its website, mobility4less.com ("Website"). TAC, ¶ 79. Swenson paid $1,618.50 by credit card which was processed by PayPal through the Website. TAC, ¶ 81. On or about September 9, 2019 the tricycle was delivered to Swenson's home. Swenson alleges that at the time of delivery, the box was crushed and the electric tricycle severely damaged. TAC, ¶ 87. Swenson alleges that the electric tricycle she purchased was delivered with scratches, dents, bends in the frame, a broken charging cable, and a shattered battery case holding four small lead acid batteries instead of the upgraded lithium battery that she purchased. TAC, ¶ 91. Eventually, Swenson contacted Mobilityless and the parties agreed to ship her a working battery charging box for the tricycle. TAC, ¶ 91, 95.

On or about July 4, 2019, Plaintiff Gerald Shearon ("Shearon") purchased an electric tricycle from Mobilityless through the Website. TAC, ¶ 120. Shearon received the tricycle unassembled and contacted University Cycles of Tallahassee, a local business, to assemble the tricycle for him. TAC, ¶¶ 125, 127. University Cycles of Tallahassee allegedly told Shearon that the tricycle was delivered with the wrong parts for key functions including the battery casing, bracket for attaching the battery casing to the bike, and steering components. TAC, ¶ 128. On or about July 18, 2019, Shearon contacted Mobilityless regarding the disputed part. TAC, ¶ 130.

### III.    PLAINTIFFS' CLAIMS

On or about December 23, 2019, the Plaintiffs brought a putative class action lawsuit against Mobilityless, LLC, Gabor Smatko, and Monica Smatko for violations of the Massachusetts Consumer Protection Act, M.G.L. c. 93A *et seq*. (Count I); Fraud (Count II); and Conspiracy (Count III) in connection with their internet purchases of an electric scooter. *See* Complaint (ECF No. 1).

On September 2, 2020, Plaintiffs filed a First Amended Class Action Complaint and Jury Demand ("FAC").  In the FAC, Plaintiffs allege that Mobilityless, Gabor Smatko, and Monica Smatko also conducted fraudulent transfers of property under the Uniform Fraudulent Transfers Act, M.G.L. ch. 109A, § 2 (Count IV) and engaged in racketeering activity under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq*. (Count V).  (ECF No. 29). Count III, Count IV, and Count V of the FAC were the only claims against Defendant Monica Smatko.

On April 12, 2022, Plaintiffs filed a Second Amended Class Action Complaint and Jury Demand ("SAC").  In the SAC, Plaintiffs added defendant Kevin Smatko to Count III, Count IV, Count V and corporate entities allegedly related to the Defendants, Fountainmoons, LLC and Tree Union LLC, to Count IV.  (ECF No. 63).  Plaintiffs also added corporate entity defendants Mobilitytrend, LLC; Epizontech, LLC; Omegas Stores, LLC; and Monica, LLC but did not identify corresponding causes of action.

On April 28, 2022, with the consent of Defendants' counsel, Plaintiffs filed a Third Amended Class Action Complaint and Jury Demand ("TAC").  The TAC added defendants Sunborrow, LLC; Poltec, LLC; Toprex, LLC; Hillsunion, LLC; Mogavike 2020, LLC; and Lagoontrees, LLC.  The TAC identified which parties are associated with each count.  (ECF No. 69).  This information was inadvertently missing from the filed SAC.  The TAC class definitions were also changed to conform to the definitions set forth in the Plaintiffs' Motion for Class Certification filed at ECF No. 60.

## IV.   <u>THE PROPOSED CLASS</u>

Plaintiffs seek to certify two consumer classes.  The first, "Class A," is a class comprised of "[a]ll persons within the United States, other than any of Plaintiff's counsel, who (1) purchased

merchandise from Mobilityless, LLC through its website www.mobility4less.com; (2) during the time-period from September 2018 to December 31, 2021." (ECF No. 60). As discussed below, this proposed class should not be certified for numerous reasons, including the fact that Plaintiffs fail to acknowledge the differences unique to each product purchased.

The second, "Class B," is a class comprised of "[a]ll persons within the United States, other than any of Plaintiff's counsel, who (1) purchased merchandise from Mobilityless, LLC through its website www.mobility4less.com; (2) received goods that were non-conforming to what was ordered; and (3) during the time-period from September 2018 to December 31, 2021." (ECF No. 60). As discussed below, Plaintiffs have failed to meet their burden for class certification of "Class A" or "Class B."

<h2 style="text-align:center">V.   <u>ARGUMENT</u></h2>

### A.  STANDARD FOR CLASS CERTIFICATION

On a motion for class certification, the Court must conduct a "rigorous analysis" of the prerequisites established by Rule 23. *Church v. Gen. Elec. Co.*, 138 F. Supp. 2d 169, 181 (D. Mass. 2001). "The moving party bears the burden of establishing the elements necessary for class certification: the four requirements of Rule 23(a) and one of the several requirements of Rule 23(b)." *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 265 (D. Mass. 2004) (*citing Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613–14, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)). As such, it is the plaintiff's burden to demonstrate numerosity, commonality, typicality and adequacy. *See Markarian v. Connecticut Mut. Life Ins. Co.*, 202 F.R.D. 60, 63 (D. Mass. 2001) (denying motion for failure to demonstrate typicality, adequacy and predominance requirements). Further, under Rule 23(b), the plaintiff must show that questions of law or fact common to the members of the class predominate over questions affecting only individual members, and that a class action is

superior to other methods of adjudication.  *Church*, 138 F.Supp.2d at 181.  The absence of any of these factors weighs in favor of individual, rather than class, treatment of the claims.

## B. THE PROPOSED "CLASS A" AND "CLASS B" ARE IMPERMISSIBLE OVERBROAD FAIL-SAFE CLASSES

A class definition cannot be a so-called "fail-safe class," *i.e.*, a class that requires a potential class member to prevail on an ultimate merits issue (such as injury) just to be a part of the class. *See Bais Yaakov of Spring Valley v. ACT, INC.*, 328 F.R.D. 6, 14 (D. Mass. 2018), *aff'd*, 12 F.4th 81 (1st Cir. 2021) (finding a "fail-safe class" where class membership is defined by whether or not members have a valid claim).  The question of uninjured class members is arguably either an Article III standing or Rule 23 issue.  In the case *In re Asacol Antitrust Litig.*, 907 F.3d 42, 56 (1st Cir. 2018), the First Circuit comprehensively addressed this issue, surveying the current state of the law and ruling that if a class definition includes uninjured class members (or at least class members whose injury cannot be presumed), a class cannot be certified because individual issues will predominate.  The *Asacol* court noted the issue of a class member who suffered no injury: "[t]he need to identify those individuals will predominate and render an adjudication unmanageable absent evidence … or some other mechanism that can manageably remove uninjured persons from the class in a manner that protects the parties' rights."  *In re Asacol Antitrust Litig.*, 907 F.3d 42, 53–54 (1st Cir. 2018); *see also Town of Lexington v. Pharmacia Corp.*, 2015 WL 1321448, at *8 (D. Mass. Mar. 24, 2015) (denying class certification "[b]ecause the proposed class is defined overly expansively….").

In order to recover under 93A, Plaintiffs and the putative class members must have suffered from some kind of identifiable harm or injury caused by Defendants.  *See Tyler v. Michaels Stores, Inc.*, 464 Mass. 492, 503, 984 N.E.2d 737, 745 (2013) (concluding that "violation of the legal right that has created the unfair or deceptive act or practice must cause the consumer some kind of

separate, identifiable harm arising from the violation itself."). "[T]he Supreme Judicial Court has made clear that statutory damages cannot substitute for the requirement that a plaintiff prove injury and causation in a chapter 93A claim." *Ferreira v. Sterling Jewelers, Inc.*, 130 F. Supp. 3d 471, 486 (D. Mass. 2015) (noting that plaintiff must prove regulatory violation plus injury caused by the unfair or deceptive act); *see also Barron v. NCMIC Ins. Co.*, 2018 WL 2089357, at *5 (D. Mass. May 4, 2018) (explaining that "[v]iolations of state regulations that constitute per se unfair or deceptive practices under Chapter 93A do not, without more, establish injury under Chapter 93A."); *Marti v. Schreiber/Cohen, LLC*, 454 F. Supp. 3d 122, 127 (D. Mass. 2020), appeal dismissed, No. 20-1518, 2020 WL 6877926 (1st Cir. June 18, 2020) ("Plaintiff must demonstrate some harm distinct from the underlying violation, e.g., an economic loss or some interference with a legal right respecting her debt.").

Here, "Class A" and "Class B" both include individuals who did not suffer any harm and were not injured, including those who received conforming goods, those who never complained, those who had their products or parts repaired or replaced by Defendants and those who received full refunds for their purchases. Defendants offer a number of products, including electric scooters, electric tricycles, electric wheelchairs, and low-temp freezers. TAC, ¶ 43. These products differ in many ways, including the fact that they utilize different technologies, are manufactured by different makes and models, and have different features and capabilities. Both plaintiff Swenson and Shearon purchased electric tricycles. Ms. Swenson received a refund for the purchase price of her tricycle. TAC, ¶ 106. Depending on which product was purchased, what was non-conforming about the product, and whether a refund was requested and/or issued pose an issue as to whether putative class members were injured or not.

With regard to proposed "Class A", the mere fact that a consumer made a purchase through the Mobilityless website does not mean that they suffered any harm or were injured.  As previously stated, "Class A" seeks to include those who purchased merchandise from Mobilityless during a specified time period.  In includes those who received conforming goods, those who never complained about their merchandise, those who had their products or parts repaired or replaced by Defendants and those who received full refunds for their purchases.   Under the proposed description, "Class A" could presumably include an individual who purchased merchandise from the Mobilityless website and was satisfied with their purchase.  This individual suffered no harm.

Similarly, "Class B" includes individuals who did not suffer any harm and were not injured. The mere fact that a customer received damaged or non-conforming goods does not mean that they suffered any harm or were injured, or that any harm or injury was a result of Defendant's alleged unfair and deceptive act or practice.  "Class B" presumably could include an individual who received a scooter that had a faulty motor, kept the scooter but denied repair by Defendant, and received a refund for the product from their credit card company.  In this instance, the purchaser received both the product and a refund of the purchase price – suffering no harm.

Instead, in order to sustain an injury, a customer must not only have received non-conforming goods but also suffered some type of identifiable harm caused by Defendants' unfair and deceptive act or practice.  Here, even if the Court were to assume that Defendants' refund, warranty, or other policy, act or practice is unfair or deceptive, an individual must have suffered from some kind of identifiable harm or injury caused by such unfair or deceptive act or practice. In this case, the damage or harm, if any, does not occur unless and until, for example, the consumer is out-of-pocket some money or the alleged non-conforming goods are not repaired, replaced, or refunded.  Otherwise, every time that a product is purchased on the internet ("Class A") or a non-

conforming product is shipped ("Class B") would result in a 93A claim.  As a result, "Class A" and "Class B" are impermissible overbroad fail-safe classes.

1.  **THERE IS NO TRIAL PLAN TO EXCLUDE INDIVIDUALS WHO RECEIVED CONFORMING GOODS, HAD PRODUCTS OR PARTS REPAIRED OR REPLACED, NEVER COMPLAINED, OR RECEIVED FULL REFUNDS**

With respect to the overbroad fail-safe classes, the Court should deny certification because the need to identify class members who may be uninjured, or who in fact suffered no injury, will predominate and render adjudication unmanageable.  *See In re Asacol Antitrust Litig.*, 907 F.3d 42, 53–54 (1st Cir. 2018) ("And to determine whether a class certified for litigation will be manageable, the district court must at the time of certification offer a reasonable and workable plan for how that opportunity will be provided in a manner that is protective of the defendant's constitutional rights and does not cause individual inquiries to overwhelm common issues.").

A court must also ensure that "any dissimilarity among the claims of class members can be dealt with in a manner that is not inefficient or unfair." *In re Asacol Antitrust Litig.*, 907 F.3d 42, 51 (1st Cir. 2018) (quotation marks omitted) (*citing Amgen, Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 469, 133 S.Ct. 1184, 185 L.Ed.2d 308 (2013)).  "[A] class may be certified notwithstanding the need to adjudicate individual issues so long as the proposed adjudication will be both administratively feasible and protective of defendants' Seventh Amendment and due process rights." *In re Asacol Antitrust Litig.*, 907 F.3d 42, 52 (1st Cir. 2018) (quotation marks omitted) (*quoting In re Nexium Antitrust Litig.*, 777 F.3d 9, 19 (1st Cir. 2015)).

In order to evaluate whether common questions predominate over individual questions, a court "must formulate some prediction as to how specific issues will play out." *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000); *see also Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 465-66 (2013) (permitting courts to examine the merits of the case as necessary to determine whether predominance is satisfied).  As such, the predominance

requirement "cannot be reduced to a mechanical, single-issue test." *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000).

## C. THE ELEMENTS FOR CLASS CERTIFICATION ARE NOT MET

### 1. NUMEROSITY[1]

Plaintiffs fail to demonstrate numerosity because both proposed classes are impermissibly broad. A party seeking class certification must affirmatively demonstrate … [and] be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011). The proposed "Class B" is comprised of "[a]ll persons within the United States, other than any of Plaintiff's counsel, who (1) purchased merchandise from Mobilityless, LLC through its website www.mobility4less.com; (2) received goods that were non-conforming to what was ordered; and (3) during the time-period from September 2018 to December 31, 2021." (ECF No. 60). Plaintiffs fail to meet the numerosity requirement. To be sure, Plaintiffs argue, without any evidentiary support, that more than 700 customers from at least twenty-one different states purchased a variety of different products through Defendant's website. *See* Motion, pgs. 1-2.[2] However, Plaintiffs have not put forth any evidence that anyone other than the Plaintiffs themselves received "goods that were non-conforming to what was ordered" and were injured. "[G]enerally, if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Torrezani v. VIP Auto Detailing, Inc.*, 2016 WL 11409907, at *1 (D. Mass. Nov. 29, 2016).

---

[1] Defendants do not contest Rule 23(a)(1) numerosity for Class A.
[2] Defendants do not dispute that more than 700 customers *purchased* a variety of different products through the Mobilityless website.

For their part, Defendants are currently aware of only 38 individuals who raised some type of "complaint" about any product that they purchased from Mobilityless, LLC, through its website www.mobility4less.com, and asked for a refund.  Many of those 38 individuals received refunds, which conceivably even further limits the number of potential individuals in any potential class.  As a result, with regard to "Class B," Plaintiffs have failed to meet the numerosity requirement and class certification should be denied.

## 2. COMMONALITY

Plaintiffs also fail to demonstrate commonality.  Commonality requires "a plaintiff to show that there are questions of law or fact common to the class…. [but] [t]hat language is easy to misread, since any competently crafted class complaint literally raises common questions." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349, 131 S. Ct. 2541, 2550–51, 180 L. Ed. 2d 374 (2011) (quotation marks and citation omitted).  "What matters to class certification ... is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011).  Courts in this circuit have found this standard to be "restrictive."  *Puerto Rico Coll. of Dental Surgeons v. Triple S Mgmt. Inc.*, 290 F.R.D. 19, 26 (D.P.R. 2013).

Plaintiffs must show that their claims rest on a "common contention where determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Raposo v. Garelick Farms, LLC*, 293 F.R.D. 52, 55 (D. Mass. 2013) (quotation marks omitted).  Additionally, Plaintiffs must, among other things, "avoid framing common questions so generally that they encompass myriad, distinct claims [and] identify central questions whose

answers will not vary by individual class members." *Kenneth R. ex rel. Tri-Cty. CAP, Inc./GS v. Hassan*, 293 F.R.D. 254, 266–67 (D.N.H. 2013) (quotation marks omitted).

Here, Plaintiffs do not satisfy this restrictive standard because liability can be determined only after consideration of the various sales at issue, the products shipped, the parts in each product, the shipping company used, and each customer's knowledge, choices, expectations, and experiences with the delivery and refund process. Each member of the proposed class purchased a different make, model, and product from the Mobilityless website. Each member of the proposed class made a unique choice to keep their merchandise; keep their merchandise and seek a refund; and/or return the merchandise and seek a refund. Further, each member of the proposed class had a different reason for non-conformity, such as missing parts, wrong parts, and/or damaged merchandise – resulting in myriad, distinct claims and answers that will vary by individual class members. Because different answers will be applicable to the different damages allegedly suffered by the proposed class, Plaintiffs cannot establish commonality.

### 3.  TYPICALITY

Plaintiffs cannot meet their burden to establish typicality. The typicality element of Rule 23(a) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Analysis of the typicality requirement "is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *Hochstadt v. Bos. Sci. Corp.*, 708 F. Supp. 2d 95, 103 (D. Mass. 2010). The "primary focus" of this inquiry "is the functional question of whether the putative class representative can fairly and adequately pursue the interests of the absent class members without being sidetracked by her own particular concerns." *In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. 17, 23 (D. Mass. 2008) (quotation marks omitted).

Although the Plaintiffs are not required to show that their claims are identical in all respects to those of the absent class members, they must "necessarily present the claims of the absent plaintiffs" when presenting their own. *Pagliaroni v. Mastic Home Exteriors, Inc.*, No. CV 12-10164-DJC, 2015 WL 5568624, at *12 (D. Mass. Sept. 22, 2015). "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998)

Although separate requirements, courts have acknowledged that the typicality and commonality requirements are similar, and that proof of each tend to "merge." *Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 456 (11th Cir. 1996). Plaintiffs' broad, over general common questions pose an issue. "Courts faced with an overbroad class definition may deny certification for want of typicality." *Williams v. Ford Motor Co.*, 192 F.R.D. 580, 586 (N.D. Ill. 2000). As such, Plaintiffs must demonstrate that their situation is typical of other Mobilityless customers that: 1) purchased merchandise from Mobilityless ("Class A"); and/or 2) purchased merchandise from Mobilityless and received goods that were non-conforming to what was ordered ("Class B"). However, Plaintiffs cannot satisfy this requirement.

Class certification is routinely denied for lack of typicality where the named plaintiff seeks to represent a class of consumers who bought products that she herself did not buy. *See, e.g., Allen v. Hyland's Inc.*, 300 F.R.D. 643, 662–63 (C.D. Cal. 2014) (denying class certification for lack of typicality where no named plaintiff purchased and/or relied upon the packaging statements for certain challenged products); *Major v. Ocean Spray Cranberries, Inc.*, No. 5:12-CV-03067, 2013 WL 2558125 EJD, at *4 (N.D. Cal. June 10, 2013) ("The primary reason behind the Court's determination that the typicality requirement has not been met is that Plaintiff's proposed classes are so broad and indefinite that they encompass products that she herself did not purchase.").

Here, as the Website indicates, Mobilityless sells a variety of different models of a variety of different products including bicycles, tricycles, wheelchairs, scooters, and a freezer. Plaintiffs only purchased two those. Swenson purchased a Cozy Trike brand electric tricycle with an upgraded battery. Shearon purchased a Fat Tire brand electric tricycle. Neither Plaintiff purchased any of the other multiple products that Mobilityless sells and Plaintiffs have no evidence that the products they purchased are substantially similar to each other or the other products sold by Mobilityless. Similarly, Plaintiffs have no evidence that the products they purchased were non-conforming for similar reasons, or had similar defects to each other or any of the other products sold by Mobilityless. Moreover, Plaintiffs' claims that their merchandise was non-conforming may be for different reasons than the proposed Class and suggests that individual issues predominate. Plaintiffs' situations are not typical; they are unique. Thus, Plaintiffs fail to meet the typicality requirement for "Class A" or "Class B," which include products other than those purchased by Plaintiffs. Class certification is inappropriate.

### D. FED. R. CIV. P. 23(B)(3) IS NOT SATISFIED

Even if Plaintiffs could satisfy all four of the prerequisites of Rule 23(a), which they do not, they still must satisfy one of the requirements of Rule 23(b). The Plaintiffs maintain that certification would be appropriate under Rule 23(b)(3). Assuming, arguendo, that the Plaintiffs could satisfy each of the four prerequisites set forth in Rule 23(a), they do not satisfy the requirements of Rule 23(b)(3).

### 1. INDIVIDUAL ISSUES PREDOMINATE

The Court should deny certification because Plaintiffs have not shown that common questions will predominate over individual questions. Rule 23(b)(3) permits certification in cases in which "the court finds that the questions of law or fact common to class members predominate

over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The core purpose of Rule 23(b)(3) is to vindicate the claims of consumers and other groups of people whose individual claims would be too small to warrant litigation." *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 41 (1st Cir. 2003).

In order to establish predominance, Plaintiffs must "demonstrate that the proposed class is sufficiently cohesive to warrant adjudication by representation." *Overka v. Am. Airlines, Inc.*, 265 F.R.D. 14, 19 (D. Mass. 2010) (quotation marks omitted).  It follows that "[t]he predominance inquiry accordingly involves an individualized, pragmatic evaluation of the relationship between and the relative significance of the common and individual issues." *In re Relafen Antitrust Litig.*, 218 F.R.D. 337, 343 (D. Mass. 2003) (citations omitted).  Although similar, "the predominance criterion is far more demanding" than Rule 23's commonality requirement.  *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 624, 117 S. Ct. 2231, 2250, 138 L. Ed. 2d 689 (1997).  While Plaintiffs have identified a number of common issues, they appear to concede that "[t]he predominant issue is receipt [of] non-conforming goods" which requires an individual inquiry.[3]  *See* Motion, pg. 14.

### i.    *Liability determinations require individualized proof and predominate.*

 "Where the issue of liability requires individualized proof and cannot be decided on a class wide basis, common issues are unlikely to predominate over individual ones, a class action is unlikely to be superior to individual adjudication of claims, and denial of class certification—or decertification of an existing class—is therefore appropriate." *Puopolo v. Com. Ins. Co.*, 2021 WL 5630783, at *2 (Mass. Super. May 13, 2021); *see also Fletcher v. Cape Cod Gas Co.*, 394 Mass.

---

[3] Plaintiffs maintain that certification under this subsection is appropriate because common issues predominate over questions affecting individual class members since "claims against Defendant are based on the same alleged course of conduct by the Defendant" and "issues relating to liability . . . predominate over any individualized issues."  Motion, pg. 13.

595, 603, 477 N.E.2d 116, 122 (1985) (finding that "questions relating to proximate cause of specific injuries … reliance upon misrepresentations … require individualized proof."). Similarly, in the present case, liability issues require individualized proof.

ii.   *Individual issues predominate with respect to Plaintiffs' Chapter 93A claim (Count I) because it depends on a showing of causation.*

Here, Plaintiffs' claims present individualized issues for which a class should not be certified.  With respect to Count I, Plaintiffs ask this Court to certify claims under Chapter 93A, which prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  M.G.L. ch. 93A, § 2.  Plaintiffs' Chapter 93A claim rests on the theory that Defendants did not publish a clear return and/or refund policy; failed to honor its warranty agreements; engaged in false advertising; and used deceptive pricing.  TAC, ¶ 175.  In support, Plaintiffs assert that Defendants "made general misrepresentations" and that they and the putative class members "relied upon" those misrepresentations, and suffered injury.  TAC, ¶¶ 175, 176.  However, a class cannot be certified under this this theory of liability under 93A because it requires a showing of detrimental reliance, an inherently individualized question.

To prevail, Plaintiffs must prove their injury was caused by the allegedly deceptive practice.  M.G.L. ch. 93A, § 9; *see Hershenow v. Enterprise Rent-A-Car Co. of Boston*, 840 N.E.2d 526, 533-35 (Mass. 2006).  Reliance is "not an essential element of a [Chapter 93A] claim," *Hershenow*, 840 N.E.2d at 534 n.20, but reliance may nevertheless "constitute[] an 'essential link' in the chain of causation that does have to be proven under Chapter 93A."  *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389, 398 (D. Mass. 2007).  Reliance is part of the causal chain in claims of deception.  *See Rodi v. S. New England Sch. of Law*, 532 F.3d 11, 19 (1st Cir. 2008); *In re TJX Cos.*, 246 F.R.D. at 398.  If a plaintiff was aware of the relevant information or would not

have altered her behavior even had she been aware, the alleged misrepresentations could not be the "but for" cause of her alleged harm. *In re TJX Cos.*, 246 F.R.D. at 398.

This causation requirement makes class certification inappropriate under this theory of liability under 93A. "Causation is yet another example of the predominance of individualized issues." *Markarian v. Connecticut Mut. Life Ins. Co.*, 202 F.R.D. 60, 68 (D. Mass. 2001). Putting aside that the facts do not support a finding of misrepresentation or other deceptive acts or practices, or any conduct that rises to the level of a 93A violation, to support causation Plaintiffs would have to establish that she and all other Massachusetts class members: 1) were misled by the Mobilityless website, and 2) would not have purchased merchandise from the website, had the website not misled them. These issues are individualized, requiring determinations concerning what information each customer received and reviewed, what each customer understood, why each customer purchased merchandise from Mobilityless, and whether each customer would have made different choices with different information. These determinations cannot be made on a class-wide basis. *See In re TJX Companies Retail Sec. Breach Litig.*, 246 F.R.D. 389, 397–98 (D. Mass. 2007) (declining to certify class given "[t]he difficulties of establishing causation on a class-wide basis … with regard to the chapter 93A claim."); *Markarian v. Connecticut Mut. Life Ins. Co.*, 202 F.R.D. 60, 68 (D. Mass. 2001) (declining to certify class under Chapter 93A given lack of common proof with regard to causation).

### iii.    *Individual issues predominate with respect to Plaintiffs' fraud claim (Count II) because it depends on a showing of causation.*

With respect to Count II, Plaintiffs ask the Court to certify claims for fraud. It is fatal to Plaintiffs' motion that "[p]roof of reliance is generally individualized to each plaintiff allegedly defrauded." *In re Polymedica Corp. Secs. Litig.*, 224 F.R.D. 27, 38-39 (D. Mass. 2004) (*quoting Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 362 (4th Cir. 2004) ("[F]raud … claims are not

readily susceptible to class action treatment, precluding certification of such actions as a class action."). Where reliance is an element of a claim, a presumption of reliance is never appropriate because "[p]roving the element of reliance will necessarily involve individual questions of fact." *In re TJX Companies Retail Sec. Breach Litig.*, 246 F.R.D. 389, 395 (D. Mass. 2007) ("A fraud class action cannot be certified when individual reliance will be an issue.") (*quoting Castano v. American Tobacco Co.*, 84 F.3d 734, 745 (5th Cir.1996). As such, proof of reliance makes class certification inappropriate in this case. These issues are individualized, requiring determinations concerning what information each customer received and reviewed, what each customer understood, and whether he or she relied on the representations. These individual considerations preclude a finding of predominance in this case.

### iv. *Individual issues predominate with respect to whether goods shipped and received were "non-conforming."*

The determination of whether merchandise shipped and received were non-conforming predominates any common issues in this case. Here, Plaintiffs argue that Defendant delivered non-conforming goods because they were missing parts, contained wrong parts, and/or were damaged. *See* Motion, pg. 10. However, the issue of non-conformity is highly individualized. Determining whether merchandise was "non-conforming" requires consideration of the various sales at issue and each customer's knowledge, choices, and expectations. Additionally, each member of the proposed class purchased a different make, model, and product from the Mobilityless website. Further, categorizing whether each member of the proposed class was missing parts, had the wrong parts, and/or received damaged merchandise results in multiple distinct claims that will vary by individual class members. Because of the varied nature of the potential complaints, the common issue of "non-conformity" is insufficient. *See Baker v. Equity Residential Mgmt., L.L.C.*, 390 F.

Supp. 3d 246, 261 (D. Mass. 2019) ("[T]he varied nature of the complaints confirms that the effect of the construction in each apartment is an individual question.").

Answering the question about whether each product that was shipped, by each shipping company that Defendant used, to each customer, contained missing parts, wrong parts, and/or was damaged; and determining whether the whether the missing parts, wrong parts, and/or damage was due to Defendant – or one of the numerous shipping companies that Defendant uses – predominates over any common issues. *See Baker v. Equity Residential Mgmt., L.L.C.*, 390 F. Supp. 3d 246, 261 (D. Mass. 2019) ("Answering the question of whether the project constituted a serious interference requires individual proof about each tenant, the conditions in his or her apartment, and the work … performed in the apartment."). Under this same analysis, the determination of whether customers received a refund, new part, or new product also predominates any common issues in this case.

> *v.    The need to identify uninjured class members from those in proposed "Class A" and "Class B" predominates any common issues in this case.*

When considering if the predominance aspect of Rule 23(b)(3) has been met, "a key factual determination courts must make is whether the plaintiffs' … evidence sweeps in uninjured class members. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 993 F.3d 774, 791 (9th Cir.), *reh'g en banc granted*, 5 F.4th 950 (9th Cir. 2021), *and on reh'g en banc*, 31 F.4th 651 (9th Cir. 2022). To make such a determination, Plaintiffs "must establish, predominantly with generalized evidence, that all (or nearly all) members of the class suffered damage as a result of Defendants' alleged … conduct." *Id*. If a substantial number of those class members "in fact suffered no injury," the need to identify those individuals will predominate over class wide issues. *In re Asacol Antitrust Litig.*, 907 F.3d 42, 53 (1st Cir. 2018). Though there is no established threshold for how great a percentage of uninjured class members is sufficient to defeat

predominance, it must be *de minimis*. *Bumble Bee Foods LLC*, 993 F.3d at 792 (9th Cir.). Here, as argued *infra*, the only individuals that suffered any potentially compensable harm are those that ordered and paid for products, received non-conforming goods, and did not get a refund. Moreover, Plaintiffs do not have a trial plan to filter out those individuals from the overbroad "Class A" and "Class B". In sum, there is simply no way to adjudicate these individual questions in a way that is "administratively feasible." *In re Asacol Antitrust Litig.*, 907 F.3d at 52 (1st Cir.).

### 2.  PROCEEDING AS A CLASS ACTION IS NOT SUPERIOR

Proceeding as a class action in this case would not be superior to other methods of adjudication. The requirement of superiority, like the predominance criteria, "ensures that resolution by class action will achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *In re Relafen Antitrust Litig.*, 218 F.R.D. 337, 346 (D. Mass. 2003). Under the standard, "a class action must be superior, not just as good as, other available methods." *Abla v. Brinker Rest. Corp.*, 279 F.R.D. 51, 58 (D. Mass. 2011).

Because of "the likely difficulties in managing a class action," Plaintiffs have not shown that a class action is superior to other available methods for the fair and efficient adjudication of this controversy under Rule 23. Conversely, given the necessity of conducting the above discussed individual inquiries, proceeding with this case as a class action would render litigation extremely difficult, if not impossible to manage, and an inefficacious means of adjudicating any arguable common issue.

In their brief, Plaintiffs devote only one, conclusory sentence to the issue of manageability. *See* Motion, pg. 15. They provide no support for their bare statement that "[t]he likely difficulties in managing a class action are minimal in this case." This failure alone should preclude class

certification.  Plaintiffs fail to identity what those "minimal" difficulties are, nor do they propose any trial plan to establish manageability of any of the issues.  In the present case, among other things, there are two proposed classes, multiple different products, and multiple reasons that goods were allegedly nonconforming.  There was no single product or single reason why the goods were allegedly nonconforming.  There simply is no trial plan that demonstrates manageability.

Finally, the same individualized issues that defeat predominance defeat superiority because they cannot be handled on a class-wide basis.  *See, e.g., In re LifeUSA Holding, Inc.*, 242 F.3d 136, 148 & n.13 (3d Cir. 2001) (class action not superior because individual adjudications relating to causation and defenses and application of differing state laws would make trying plaintiff's claims in a class action a "thoroughly unwieldy endeavor"); *see also In re Celexa and Lexapro Mktg. & Sales Pracs. Litig.*, 315 F.R.D. 116, 130-31 (D. Mass. 2016).

## VI.   CONCLUSION

For all of the above reasons, Plaintiffs' Motion for Class Certification should be denied.

Dated: May 6, 2022                    Respectfully submitted,
                                      **GABOR SMATKO**
                                      **MONICA SMATKO**
                                      **MOBILITYLESS, LLC**
                                      By Their Attorneys:


                                      *Chelsea K. Choi*
                                      _____
                                      Jeffrey S. Morneau, Esq. BBO No. 643668
                                      Chelsea K. Choi, Esq. BBO No. 697440
                                      Connor & Morneau, LLP
                                      273 State Street, Second Floor
                                      Springfield, Massachusetts 01103
                                      Phone (413) 455-1730
                                      Fax (413) 455-1594
                                      E-mail: jmorneau@cmolawyers.com
                                      E-mail: cchoi@cmolawyers.com




### CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated as non-registered participants on the date of its filing.

Adam Deutsch, Esq. (BBO 569173)
Northeast Law Group, LLC
P.O. Box 60717
Longmeadow, MA 01116
adam@northeastlawgroup.com


                                      *Chelsea K. Choi*
                                      _____
                                      Chelsea K. Choi, Esq.