UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| BARBARA SWENSON; GERALD SHEARON<br><br>Plaintiffs,<br><br>v.<br><br>MOBILITYLESS, LLC; GABOR SMATKO; MONICA SMATKO; KEVIN SMATKO; SUNBORROW, LLC; POLTEC, LLC; MONICA, LLC; OMEGASTORES, LLC; TOPREX, LLC; TREE UNION, LLC; EPIZONTECH, LLC; FOUNTAINMOONS, LLC; HILLSUNION, LLC; MOBILITYTREND, LLC; MOGAVIKE2020, LLC; LAGOON TREES, LLC; JOHN DOES I-X<br><br>Defendants. | ) | Case No. 3:19-cv-30168-MGM |

<u>REPORT AND RECOMMENDATION ON PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS</u>
(Dkt. No. 124)

ROBERTSON, U.S.M.J.

Before the court is a motion by plaintiffs Barbara Swenson ("Swenson") and Gerald Shearon ("Shearon") (collectively, "Plaintiffs") for attorney's fees and costs based on the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964 ("the RICO Act"), the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, § 9(4) ("Chapter 93A"), and Fed. R. Civ. P. 54(d). Plaintiffs' motion follows entry of judgment awarding Plaintiffs a total of $13,500, inclusive of treble damages and interest, against all Defendants on all counts of the complaint. The offer of judgment accepted by Plaintiffs reserved their right to file a motion for

attorney's fees and costs. Their motion seeks $308,680.71 in fees and costs (Dkt. No. 124).[1] Defendants seek a substantial reduction in any such award. The motion has been referred to me for a report and recommendation (Dkt. No. 128). *See* Fed. R. Civ. P. 54(d)(2)(D) and 72(b). For the reasons set forth below, the court recommends an award of $80,580 in fees and $33,312.05 in costs for a total of $113,892.05.

## I. RELEVANT BACKGROUND

### A. Facts

#### 1. Defendants' business practices

In their third amended complaint ("TAC"), Plaintiffs, who are mobility-impaired, alleged on behalf of themselves and a putative class of customers that defendants Gabor Smatko and Mobilityless, LLC ("Mobilityless") violated Chapter 93A and committed common law fraud, Mobilityless, Gabor Smatko, his wife Monica Smatko, their son, Kevin Smatko, and twelve other limited liability companies conspired to defraud Plaintiffs and other mobility-impaired consumers, Gabor, Monica, Kevin, and twelve limited liability companies violated the Uniform Fraudulent Transfer Act, Mass. Gen. Laws ch. 109A ("UFTA"), and Gabor, Monica, and Kevin violated the RICO Act.[2] The claims were premised on Defendants' on-line sales of defective mobility-assistance devices, associated unfair business practices, and attempts to hide assets from Plaintiffs and the putative class (Dkt. No. 79 ¶¶ 174-287).

[1] Plaintiffs' petition requests attorney's fees of $162,360 and costs of $146,342.96 (Dkt. No. 124 at 2). However, elsewhere in the petition they seek costs of $146,117.25 (Dkt. No. 124 at 11; Dkt. No. 124-2 ¶ 52). The court accepts Plaintiffs' documentation: itemized costs of $26,651.71 (Dkt. No. 124-4) and forensic accountant fees of $119,669 (Dkt. No. 124-6 at 14) for a total of $146,320.71.

[2] Because defendants Gabor Smatko, Monica Smatko, and Kevin Smatko share the same surname, they are referred to herein by their first names.

In 2006, the Connecticut Attorney General filed suit against Gabor and his corporation, Defendant Monica, LLC, d/b/a Omegastores.com, alleging that they had violated the Connecticut Unfair Trade Practices Act by shipping and delivering "products that were defective or damaged, that were missing parts, instructions, and product information, and, at times, that were the wrong product" (Dkt. No. 79 ¶¶ 24, 25). The Attorney General further charged that Gabor and his corporation refused to repair the defective products, refund customers' payments, respond to consumers' inquiries, and package products safely for shipping (Dkt. No. 79 ¶ 25). In 2010, the State of Connecticut, Gabor, and Monica, LLC, entered into a consent decree prohibiting Gabor and Monica, LLC, from engaging in unlawful business practices and requiring them to pay restitution to consumers who had filed complaints against the company (Dkt. No. 79 ¶¶ 26, 27).

In 2014, Connecticut filed a motion for contempt after Gabor and his company violated the consent decree. The Connecticut Superior Court entered an order that required Gabor and Monica, LLC, to provide consumers seven days to inspect and reject a product after they received it; provide a full refund, including shipping costs incurred by consumers, to consumers who rejected and returned a nonmerchantable product; adequately package products to prevent damage during shipping; inform consumers who identified themselves as disabled or physically impaired that the mobility devices were not suitable for individuals with disabilities or physical impairments; refrain from collecting a fee from consumers who disputed a credit card charge related to a purchase; stop telling consumers that they could not refuse a shipment if the shipping container was distressed or open; and clearly and conspicuously disclose the warranty and return policy on the defendants' website in understandable language and syntax (Dkt. No. 79 ¶¶ 28-30).

According to the TAC, Gabor then shifted his fraudulent business to Massachusetts, operating under the names Mobilityless and Epizontech, LLC, which were purportedly located at

87 Mill Street in Springfield (Dkt. No. 79 ¶¶ 6, 39(e) & (f), 42, 45). The TAC describes misrepresentations and fraudulent policies displayed on the Mobilityless website, Mobility4Less.com, which advertised electric scooters, electric tricycles, electric bicycles, electric wheelchairs, low-temp freezers, and motorized surfboards (Dkt. No. 79 ¶¶ 43, 59-74).

Plaintiffs purchased electric tricycles from Mobilityless (Dkt. No. 79 ¶¶ 43, 79, 120). Shearon purchased an electric tricycle, a PowerBooster, and a charger for $3,223.50. He received unassembled, damaged, nonconforming goods. Following instructions, Shearon shipped the damaged parts to Mobilityless using the return label that Mobilityless provided. Gabor and Mobilityless claimed that they did not receive Shearon's package, never replaced the defective parts, refused to accept the return of the tricycle, and did not issue a refund, but offered to replace the parts that were covered by the purported warranty if Shearon provided a copy of his personal check. When Shearon refused, Gabor filed a debt collection suit against Shearon in the Springfield District Court Department of the Massachusetts Trial Court ("Springfield District Court"). The case was dismissed (Dkt. No. 79 ¶¶ 120, 121, 125, 126, 128-30, 134, 135, 137-39, 141-44).

Swenson used PayPal to purchase an electric tricycle and an upgraded lithium battery from the Mobilityless website for $1,618.50. Mobilityless sent a severely damaged tricycle that arrived in a crushed box. The lithium battery was missing, and the tricycle's battery charging box was damaged. Mobilityless agreed to replace the charging box for $80 and directed Swenson to provide a scanned copy of her personal check marked "VOID" so it could withdraw $80 from her bank account. When Swenson did so, Gabor made the check payable to "Mobility" in the amount of $124.20. Swenson stopped payment on the check and never received the replacement part. After PayPal refunded the tricycle's purchase price, Gabor threatened to sue

Swenson in Massachusetts and have her arrested for larceny if she failed to return the tricycle or pay for it by check. Swenson paid $521.40 to ship the tricycle to Mobilityless in Connecticut. Gabor refused to accept delivery and repeated his threats of suit and arrest unless she texted a copy of her check to a phone number that he provided. When Swenson refused, Gabor sued her in the Springfield District Court for the purchase price of the tricycle plus costs. Like the suit against Shearon, the suit against Swenson was dismissed for lack of jurisdiction (Dkt. No. 79 ¶¶ 78-81, 87, 91, 95-102, 106, 107, 111, 113, 114, 116, 118).

2. Property Transfers

In 1999, Gabor founded Defendant Monica, LLC, in Connecticut (Dkt. No. 79 ¶ 21). According to Plaintiffs, from September 2008 to June 2020, Gabor, Monica, and Kevin created twelve additional entities to hide personal and business assets from potential creditors, those being Toprex, LLC; Poltec, LLC; Sunborrow, LLC; Tree Union, LLC; Omega Stores, LLC; Epizontech, LLC; Mobilityless, LLC; Fountainmoons, LLC; Hillsunion, LLC; Mogavike2020, LLC; Mobilitytrend, LLC; and Lagoon Trees, LLC. Some of these entities engaged in internet sales or held assets that were transferred from the entities that engaged in internet sales. Others held real estate that was either transferred from Gabor, Monica, or Kevin, or was purchased with the proceeds of the internet sales (Dkt. No. 79 ¶¶ 36-39, 41).

Gabor purchased a home in Connecticut in 2002 (Dkt. No. 79 ¶ 210). In 2007, after the Connecticut Attorney General filed suit against Monica, LLC, and Gabor, he transferred the home to Monica. After the instant lawsuit was filed, Monica transferred the home to Kevin, who then transferred the property to his solely owned entity, Defendant Tree Union, LLC (Dkt. No. 79 ¶¶ 188(f), 213, 231, 233, 234).

In July 2019, Gabor purchased a home in Arizona with cash and later obtained a $937,500 loan secured by a mortgage on the home. After Plaintiffs sent Gabor a Chapter 93A demand letter and filed suit, he transferred the home to Monica who then transferred ownership of the property to Fountainmoons, LLC (Dkt. No. 79 ¶¶ 156, 219, 221, 223-29). According to Plaintiffs, Gabor and Monica used Mobilityless profits to buy at least seven residential properties in Arizona between April 2020 and September 2021 while the instant case was pending (Dkt. No. 79 ¶¶ 39(*l*), 157, 238).

B. Procedural History

The court sets out some of the procedural history in detail because it is relevant to the court's recommendation for an award of fees and costs.

After Plaintiffs filed a putative class action against Mobilityless, Gabor, and Monica, they attempted to serve the defendants (Dkt. No. 3). While they were able to serve Mobilityless, they made multiple unsuccessful attempts to serve Gabor and Monica in Connecticut and Arizona. After the court granted Plaintiffs extra time to serve Defendants, the court found that there was ample evidence to show that Gabor and Monica were deliberately evading service of process, and approved Plaintiffs' motion for leave to serve the complaint and summonses by alternate means (Dkt. Nos. 4, 6, 7, 8, 9, 10). *Swenson v. Mobilityless, LLC,* Civil Action No. 19-30168-KAR, 2020 WL 2404835, at *2 (D. Mass. May 12, 2020). On June 19, 2020, Plaintiffs requested entry of default against all Defendants because Gabor and Monica failed to respond to the complaint (Dkt. No. 12). After default entered, Plaintiffs moved for leave to take discovery prior to seeking class certification and a default judgment so they could identify victims, assess class damages, and locate Defendants' assets (Dkt. No. 17 at 3). Gabor and Monica, who were self-represented at that point, moved to dismiss the complaint and opposed Plaintiffs' discovery

motion (Dkt. Nos. 18, 19, 20). After defense counsel entered an appearance, Defendants filed an assented-to motion to set aside the default and extend the time for filing an answer or response to the complaint (Dkt. Nos. 21, 22). The court allowed the motion and denied as moot Plaintiffs' motion for leave to obtain discovery and Defendants' motion to dismiss (Dkt. No. 24). On August 13, 2020, all Defendants filed an answer to the complaint and Monica moved to dismiss the claims against her (Dkt. Nos. 26, 27).

Plaintiffs filed the first amended complaint adding claims against Gabor and Monica for violating the UFTA and the RICO Act (Dkt. No. 29). Mobilityless answered the amended complaint on September 30, 2020 (Dkt. No. 32). Monica, however, sought dismissal of the three claims against her and Gabor moved to dismiss the RICO Act claim (Dkt. No. 33, 35). The presiding District Judge denied Monica's and Gabor's motions to dismiss and denied as moot a second motion for discovery filed by Plaintiffs (Dkt. No. 41). Plaintiffs then moved for and were granted leave to file a second amended complaint adding claims and defendants, principally to address Defendants' attempts to hide assets (Dkt. Nos. 53, 62, 63).

Deeming Defendants' discovery responses inadequate, Plaintiffs moved to compel Mobilityless and Gabor to produce documents and answers to interrogatories (Dkt. No. 54 at 7). The court granted Plaintiffs' motion to compel in part (Dkt. No. 80). *Swenson v. Mobilityless,* LLC, Civil Case No. 3:19-30168-MGM, 2022 WL 2347113 (D. Mass. June 29, 2022). Thereafter, Plaintiffs moved to certify a class and to attach and/or enjoin Defendants from further disposition or transfer of real estate (Dkt. No. 60, 76). The court denied these motions without prejudice (Dkt. No. 112, 116). Plaintiffs filed the TAC with Defendants' consent (Dkt. Nos. 78, 79). The limited liability company defendants sought a protective order excusing them from compliance with Plaintiffs' Rule 30(b)(6) deposition notices or, in the alternative, for a limit on

the scope of the depositions (Dkt. No. 103). The court denied so much of Defendants' motion as sought an order precluding the depositions (Dkt. No. 113). Plaintiffs then moved for sanctions against Defendants for their failure to fully comply with the court's order on Plaintiffs' motion to compel (Dkt. No. 111).

On November 21, 2022, Plaintiffs accepted Defendants' offer of judgment on all counts of the TAC against all Defendants pursuant to Fed. R. Civ. P. 68(a) (Dkt. No. 121).

## II. ANALYSIS

Plaintiffs' petition seeks an award of fees and costs totaling $308,680.71 (Dkt. No. 124). Plaintiffs maintain that the request is reasonable because Defendants' conduct increased fees and costs and counsel's work motivated Defendants to settle the case. For their part, Defendants object to all aspects of Plaintiffs' request – the time spent, the hourly rate, and the expenses – with particular emphasis on the disparity between the amount recovered in damages and Plaintiffs' request for fees and costs. Defendants ask the court to significantly reduce the amount of any award (Dkt. No. 133).

### A. Attorney's Fees

#### 1. Legal Standard

Defendants do not dispute that Plaintiffs are entitled to attorney's fees and costs based on the fee provisions in Chapter 93A and the RICO Act. *See* 18 U.S.C. § 1964(c); Mass. Gen. Laws ch. 93A, § 9(4). Under the RICO Act and Chapter 93A, an attorney's fee award is calculated by multiplying the reasonable number of hours that the attorney spent working on the case by a reasonable hourly rate to reach the lodestar figure. *See Sys. Mgmt., Inc. v. Loiselle,* 154 F. Supp. 2d 195, 208 (D. Mass. 2001); *Hyannis Anglers Club, Inc. v. Harris Warren Commercial Kitchens, LLC,* 78 N.E.3d 784, 792-93 (Mass. App. Ct. 2017) (citing *Fontaine v. Ebtec Corp.,*

613 N.E.2d 881, 891 (Mass. 1993)); *see also Blanchette v. Cataldo,* 734 F.2d 869, 878 (1st Cir. 1984) ("where an award of fees or costs rests on state law, state law also controls the method of calculating the size of the award . . . .") (citations omitted). The following factors are considered for determining a reasonable fee:

> 1) the nature of the case and issues presented, 2) the time and labor required, 3) the amount of damages involved, 4) the result obtained, 5) the experience, reputation, ability and competence of the attorney, 6) the usual price charged for similar services by other attorneys in the same area and 7) the amount of awards in similar cases.

!

*RFF Family P'ship, LP v. Link Dev., LLC*, Civil Action No. 14-10065-NMG, 2015 WL 1472253, at *2 (D. Mass. Mar. 31, 2015), *aff'd sub nom. RFF Family P'ship, LP v. Ross*, 814 F.3d 520 (1st Cir. 2016) (citing *Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co.,* 837 N.E.2d 1121, 1138 (Mass. 2005)); *Haddad Motor Grp., Inc. v. Karp, Ackerman, Skabowski & Hogan, P.C.*, CIVIL ACTION NO. 03-10182-RCL, 2009 WL 10695247, at *11 (D. Mass. Jan. 16, 2009), *aff'd,* 603 F.3d 1 (1st Cir. 2010).

Plaintiffs bear the burden of establishing the reasonableness of the hours sought, *see Burke v. McDonald,* 572 F.3d 51, 63 (1st Cir. 2009), and "the prevailing hourly rate . . . in the community for the performance of similar legal services by comparably credentialled counsel." *Hutchinson ex rel. Julien v. Patrick*, 636 F.3d 1, 16 (1st Cir. 2011). In determining an attorney's hourly rate, the court examines "[t]he experience, reputation, and ability of the attorney, and the usual prices charged for similar services by other attorneys in the same area." *Butler v. Sigma-Aldrich, Inc.,* CIVIL ACTION NO. 02-40238-TSH, 2006 WL 8458676, at *4 (D. Mass. Nov. 3, 2006). A plaintiff must produce "contemporaneous time and billing records, suitably detailed" to support the fee request. *Hutchinson ex rel. Julien,* 636 F.3d at 13. Further, a court determining a fee award may distinguish between 'core' and 'non-core' legal work 'to prevent attorneys from

earning their regular lawyers' fees for work that could be performed by a less skilled employee.'" *Showtime Entm't LLC v. Ammendolia,* Civil Action No. 10-40194-FDS, 2016 WL 1555685, at *8 (D. Mass. filed Apr. 15, 2016) (quoting *Stokes v. Saga Int'l Holidays, Ltd.*, 376 F. Supp. 2d 86, 95 (D. Mass. 2005)). The First Circuit "has allowed district courts the flexibility to determine whether the distinction is appropriate in a particular case." *Id.* "[T]he core versus non-core work approach is just one discretionary way, as opposed to the only way, for determining reasonable fees." *Gonpo v. Sonam's Stonewalls & Art, LLC,* Civil Action No. 16-40138-MGM, 2021 WL 1795601, at *4 (D. Mass. Apr. 1, 2021); *see also Matalon v. Hynnes,* 806 F.3d 627, 639 (1st Cir. 2015).

Although "[i]t is . . . well settled that a plaintiff 'may not recover attorneys' fees on unsuccessful claims,'" *McDermott v. Marcus, Errico, Emmer & Brooks, P.C.,* 53 F. Supp. 3d 312, 319-20 (D. Mass. 2014) (quoting *Trainor v. HEI Hosp., LLC,* 699 F.3d 19, 35 (1st Cir. 2012)), that principle does not apply to a plaintiff whose recovery is based on a "'single chain of events . . . .'" *Haddad Motor Grp., Inc.*, 603 F.3d at 10 (quoting *DiMarzo v. Am. Mut. Ins. Co.*, 449 N.E.2d 1189, 1202 (Mass. 1983)). *See Hanover Ins. Co. v. Sutton*, 705 N.E.2d 279, 296 (Mass. App. Ct. 1999) (apportionment is not required if non-Chapter 93A claims arose from a "common core of facts."). However, "time invested in issues that are litigated profligately, unnecessarily, or without benefit to the prevailing party may be disallowed." *United States v. One Star Class Sloop Sailboat built in 1930 with hull no. 721, named "Flash II"*, 546 F.3d 26, 39 (1st Cir. 2008).

Plaintiffs' fee request is approximately twelve times greater than the offers of judgment they accepted (Dkt. No. 133 at 15-16). Disproportion between the damages recovered and the fees requested does not automatically entitle the opposing party to a reduction of the fee award.

*See Rodriguez-Hernandez v. Miranda-Velez,* 132 F.3d 848, 859 (1st Cir. 1998) ("the Supreme Court has held that the size of the verdict does not bar recovery of large attorney's fees awards.") (citing *City of Riverside v. Rivera,* 477 U.S. 561, 574 (1986)); *see also Twin Fires Inv., LLC,* 837 N.E.2d at 1137-39 (awarding attorney's fees of almost ten times the amount of the award in a Chapter 93A case). The relationship between the fee request and the results obtained is, however, a factor in the fee determination. *See Crossfit, Inc. v. Mustapha,* Civil Action No. 13-11498-FDS, 2016 WL 3527197, at *5 (D. Mass. June 23, 2016) ("'The amount [of damages] recovered is one factor in determining what fee is reasonable, but is by no means the fundamental factor.'") (alteration in original) (quoting *Haddad Motor Grp., Inc.,* 603 F.3d at 10 (citations and internal quotation marks omitted)). !

At the end of the day, "[t]he amount of a reasonable fee . . . is 'largely discretionary with the judge.'" *Joyce v. Town of Dennis*, 720 F.3d 12, 26 (1st Cir. 2013) (quoting *Fontaine,* 613 N.E.2d at 890). *See Twin Fires Inv., LLC,* 837 N.E.2d at 1138. A trial court is required to "'make concrete findings, supply a clear explanation of its reasons for the fee award, and most of all, retain a sense of overall proportion.'" *Showtime Entm't LLC*, 2016 WL 1555685, at *3 (quoting *United States v. Metro. Dist. Comm'n,* 847 F.2d 12, 16 (1st Cir. 1988)). The court is not required to provide an hour-by-hour analysis. *See id.*

The court's recommendation for an award of fees and costs is made in light of these principles, taking into account the material submitted by the parties and their respective arguments. In summary, the court rejects Defendants' contentions concerning the hourly rate of Plaintiffs' counsel, the level of detail in his billing records, and his performance of tasks they characterize as non-core tasks. Nor does the court accept Defendants' contention that Plaintiffs should not be compensated for time their attorney spent on claims that do not come with an

entitlement to attorney's fees. The court, however, agrees with Defendants that there should be reductions to Plaintiffs' petition for time spent on tasks that did not contribute to Plaintiffs' recovery, including time spent related to certification of a class, and to account for the disparity between the settlement amounts and the amount of fees and costs they seek to recover. Where it was possible to do so, the court has differentiated between compensable and non-compensable time. The court has applied an across-the board reduction factor where, in the court's view, it was not possible to allocate the time spent entirely or almost entirely for a compensable or a non-compensable purpose. The findings, reasons for those findings, and legal support are set forth below.

2. An hourly rate of $400 is reasonable, the billing records are sufficiently detailed, and the court declines to apply the core/non-core distinction.

Plaintiffs contend that they are entitled to $400 per hour for the 405.9 hours Mr. Deutsch spent from drafting the Chapter 93A letter and original complaint through service of process, motion practice, discovery, amending the complaint, mediation, settlement, and preparing the fee petition. Mr. Deutsch is a solo practitioner who does not employ an associate or a paralegal. In support of their petition, Plaintiffs have submitted Mr. Deutsch's declaration, forty-five pages of billing records from November 8, 2019 through December 1, 2022, which show the dates, time spent in ten minute increments, tasks performed, and amounts charged, along with the declarations of four attorneys with consumer law experience addressing hourly rates in the relevant geographic area (Dkt. Nos. 124-2, 124-3, 124-7, 124-8, 124-9, 124-10).

Defendants take issue with an hourly rate of $400 and propose calculating the lodestar by reducing the total hours by 50% based on allegedly inadequately documented entries and block billed time. After that reduction, Defendants suggest designating 50% of Mr. Deutsch's time as

core work compensated at $275-$300 per hour and designating the remaining 50% as non-core work compensated at $100 per hour. Defendants recommend further reducing the total by $24,240, representing 60.6 hours that Defendants claim is fairly characterized as non-compensable time spent on administrative tasks (Dkt. No. 133 at 18-22; Dkt. No. 133-5). In support, Defendants submitted spreadsheets that categorized the individual entries in the billing records as time unrelated to the Chapter 93A and RICO Act claims, expenditures for unsuccessful tasks, pre-litigation expenses, administrative time, excessive time, inadequately described entries, block-billed time, and time spent issuing and arranging for service of subpoenas (Dkt. Nos. 133-2 to 133-9). A number of the billing entries Defendants are challenging appear on more than one spreadsheet.

I recommend that the court reject each of these contentions.

First, Plaintiffs have sufficiently established $400 as the prevailing hourly rate in Springfield for attorneys with skill, experience, and reputation comparable to that of Mr. Deutsch. *See Feed Commodities Int'l, Inc. v. Gray,* Case No. 13-cv-12239-KAR, 2016 WL 3962823, at *4 (D. Mass. July 21, 2016). Mr. Deutsch has focused on representing consumers since he began practicing law in 2010 (Dkt. No. 124-2 ¶¶ 3, 8, 9). Since 2017, he has billed clients in non-contingency and non-fee shifting cases at a rate of $400 per hour (Dkt. No. 124-2 ¶¶ 12, 13). *See McDermott,* 53 F. Supp. 3d at 322 ("Useful guideposts of the market rate in the prevailing community include 'the rate that a private lawyer actually charges to clients in the ordinary course of his practice.'") (quoting *Hutchinson ex rel. Julien,* 636 F.3d at 16). Although one attorney who submitted a declaration in support of Plaintiffs' claim was a staff attorney at the National Consumer Law Center and another attorney practiced in Boston, the other two practiced consumer law in Mr. Deutsch's geographic area (Dkt. Nos. 124-7 ¶ 1, 124-8, 124-9 ¶ 5; 124-10 ¶

4). All four attorneys opined that Mr. Deutsch's hourly rate of $400 was reasonable and appropriate for the legal services he provided in this case (Dkt. Nos. 124-7 ¶ 19, 124-8 ¶ 16, 124-9 ¶ 17, 124-10 ¶ 15). The United States Consumer Law Center's Attorney Fee Survey Report indicated that approximately $350 per hour was the average hourly rate for Springfield attorneys who practiced consumer law about two years before Plaintiffs filed suit (Dkt. No. 124-5 at 346). In a recent case that was litigated in Springfield, a judge in this district approved an hourly rate of $450 for a civil rights attorney with more than ten years of experience. *See Schand v. McMahon,* 487 F. Supp. 3d 71, 82 (D. Mass. 2020). For their part, Defendants presented the declarations that two attorneys submitted to support fee petitions in other cases litigated in state court (Dkt. No. 133-21, 133-22). One of these attorneys failed to state how long he had been practicing and the other focused on municipal law (Dkt. Nos. 133-21, 133-22 ¶ 3). This meager showing does not warrant a reduction in Mr. Deutsch's proposed hourly rate. Because Mr. Deutsch has significant experience in consumer protection matters and proposes compensation at the prevailing rate in the Springfield area, this court recommends approving $400 as Mr. Deutsch's hourly rate.

Second, the details in Mr. Deutsch's records are sufficient to permit "a fair evaluation of the time expended, the nature and need for the service, and the reasonable fees to be allowed." *Hensley v. Eckerhart,* 461 U.S. 424, 441 (1983) (Burger, C.J., concurring). "[A] court may discount or, in egregious cases, disallow hours when the contemporaneous records are 'too generic and, thus, insufficient as a practical matter to permit a court to answer questions about excessiveness, redundancy, and the like.'" *McDermott*, 53 F. Supp. 3d at 319 (quoting *Torres–Rivera v. O'Neill–Cancel,* 524 F.3d 331, 336 (1st Cir. 2008)). Clarification of imprecise billing entries may "'com[e] from surrounding billing entries as well as the docket.'" *Id.* (alteration in

original) (quoting *Carmel & Carmel PC v. Dellis Constr., Ltd.,* 858 F. Supp. 2d 43, 47 (D.D.C. 2012)); *see also Showtime Entm't LLC v. Ammendolia,* 885 F. Supp. 2d 507, 532 (D. Mass. 2012), *rev'd in part on other grounds sub nom. Showtime Entm't LLC v. Town of Mendon,* 769 F.3d 61 (1st Cir. 2014) (entries referring to legal research which did not identify the claims was sufficiently specific because the timing of those entries clarified that the research addressed certain claims at issue on summary judgment).

Here, "[t]he extensive contemporaneous billing records submitted are sufficiently detailed to permit the court to weigh the appropriateness of the kind of work done by counsel at each stage of [the] case . . . ." *Rini v. United Van Lines, Inc.,* 903 F. Supp. 234, 238 (D. Mass. 1995). "When placed in temporal context, the majority of the more cryptic entries allow this court to decipher the task and the necessity for the work." *McDermott,* 53 F. Supp. 3d at 320. For example, Defendants point to a November 15, 2022 entry for a "call with [Plaintiff] Shearon" as being too vague. Other entries for that date, however, indicate that settlement negotiations were ongoing, requiring Mr. Deutsch to consult with his client (Dkt. No. 124-3 at 3-4). Other examples Defendants point to on January 28, October 14, and October 26, 2022, are also explained by related entries (Dkt. No. 124-3 at 6, 7, 21, 24). The records that Defendants claim are ambiguous are adequately explained in context.

Third, as to Defendants' argument that a lower hourly rate should be applied for non-core work, the court has not attempted to identify each so-called non-core task in the forty-five pages of billing records. *See Pérez-Sosa v. Garland*, 22 F.4th 312, 322 (1st Cir. 2022) ("Because district judges 'need not, and indeed should not, become green-eyeshade accountants,' they 'may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.'") (quoting *Fox v. Vice,* 563 U.S. 826, 838 (2011)). Instead, in calculating the

fee award, this court has recommended discounting by 50% the billable hours that the court has not allocated to the category of compensable or non-compensable time. In the court's view, this sufficiently accounts for time spent on administrative tasks. Although an attorney's choice "to practice without partners or associates does not automatically entitle [him] to [his] full hourly rate for work routinely done by junior lawyers, paralegals, secretaries, or other lower-level personnel," *id.* at 328, in this court's view, no additional reduction is warranted.[3]

Fourth, the court finds unpersuasive Defendants' contention that "[a]lmost one-half of the entries billed by Plaintiffs' counsel [after exclusions for time they argue should be disallowed] reflects block billing" (Dkt. No. 133 at 15). "'Block billing' is an industry term used to describe 'the time-keeping method by which an attorney lumps together the total daily time spent working on a case, rather than itemizing the time expended on specific tasks.'" *E.E.O.C. v. AutoZone, Inc.,* 934 F. Supp. 2d 342, 354-55 (D. Mass. 2013) (quoting *Conservation Law Found., Inc. v. Patrick,* 767 F. Supp. 2d 244, 253 (D. Mass. 2011)). "Block billing is generally disfavored by courts and sanctioned by reducing the fee." *Norkunas v. HPT Cambridge, LLC,* 969 F. Supp. 2d 184, 196 (D. Mass. 2013). Although Defendants claim to have identified fifty-four instances of block billing, there are no entries that describe Mr. Deutsch's tasks for an entire day (Dkt. No. 133-8). Less than ten percent of the entries identified by Defendants recorded more than two hours of attorney time. Those entries are sufficiently detailed to permit the court to determine that Mr. Deutsch's time was expended on related tasks (Dkt. No. 124-3 at 5 [11/4/22], 22 [2/13/22], 29 [11/18/21], 36 [10/12/20], 41 [4/16/20]). Because the majority of the purportedly

[3] Defendants' spreadsheet detailing 60.6 hours of administrative tasks include entries that duplicate billable hours that the court has excluded for other reasons. If Defendants' position concerning core and non-core work were adopted, time spent on some administrative tasks would be excluded twice.

block billed entries describe related tasks, there is no basis for a reduction. *See Casco, Inc. v. John Deere Constr. & Forestry Co.,* 596 F. Supp. 3d 359, 375-76 (D.P.R. 2022) (denying defendant's request for a deduction of fees corresponding to purportedly block billed time expended on a variety of tasks that were related to depositions). *Compare Ellicott v. Am. Capital Energy, Inc.*, Civil Action No. 14-12152-FDS, 2017 WL 1224537, at *2 (D. Mass. Apr. 3, 2017).

3. Compensable and non-compensable time

The court also recommends rejecting Defendants' contention that the amount in the fee petition should be reduced because only two claims – those asserted under Chapter 93A and the RICO Act – carry an entitlement to attorney's fees (Dkt. No. 133 at 7-8). Defendants cite no authority for this contention and the argument is otherwise not persuasive. *See Hensley*, 461 U.S. at 435 n.11 (rejecting "'a mathematical approach comparing the total number of issues in the case with those actually prevailed upon.' . . . Such a ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors.") (citation omitted).

Defendants' liability on all counts was based on their joint participation in fraudulent and deceptive business practices that included knowingly selling defective and nonconforming mobility-assistance devices to Shearon and Swenson through internet websites, shipping the goods in interstate commerce, misrepresenting the policies for the return of goods, refunds, and cancellations of orders, giving confusing, untruthful, and deceptive responses to Shearon's and Swenson's complaints via e-mail, engaging in extortionate debt collection practices, and making fraudulent transfers to conceal assets, including sales proceeds and real property, from Plaintiffs (Dkt. No. 79 ¶¶ 174-287). Because Plaintiffs' successful individual claims were "all inextricably intertwined, legally and factually," *Rini,* 903 F. Supp. at 238, Plaintiffs can recover for the time spent on the work related to all claims.

In contrast, I recommend that Plaintiffs not recover fees for time spent on their abandoned attempt to represent a class or on unproductive activities. *See Hensley*, 461 U.S. at 436; *One Star Class Sloop Sailboat*, 546 F.3d at 39. As to discovery related to the identification of additional potential claimants and certification of a class, Plaintiffs argue that they should not be penalized for choosing to resolve their claims on an individual basis. While Plaintiffs certainly had the right to settle on an individual basis, fee awards belong to the plaintiff not the attorney, *see Hermida v. Archstone,* 950 F. Supp. 2d 298, 307 (D. Mass. 2013) (fees awarded under Chapter 93A belong to the plaintiff, not the attorney; collecting cases), and their choice to abandon class representation should carry with it the consequence that they forfeit the right to collect fees for litigation expenses related to representing a class. *See Xing-Fang Huang v. DGC Rest., Inc.,* Civil Action No. 14-10096-JGD, 2014 WL 4373190, at *3 (D. Mass. Sept. 2, 2014) ("The settlement [in the FLSA case] related only to the individual claims of the three named plaintiffs. Under such circumstances, plaintiffs should not be compensated for issues relating to class certification."); *Denny v. Westfield State Coll.,* CIV. A. Nos. 78-2235-F, 78-3068-F, 1989 WL 112823, at *4 (D. Mass. May 12, 1989) (reducing attorney's fees for time expended on a failed attempt to certify a class in a Title VII case). !

*a. Compensable time*

"Compensation for pre-suit fees is appropriate where the work was useful and necessary to advance the litigation." *Allstate Ins. Co. v. Fougere,* 594 F. Supp. 3d 212, 225 (D. Mass. 2022), *appeal docketed,* No. 22-1258 (1st Cir. Apr. 11, 2022). *See Webb v. Bd. of Educ. of Dyer Cty.,* 471 U.S. 234, 250 (1985) (Brennan, J., concurring in part). The court recommends that Plaintiffs be compensated for **22.6 hours** of pre-suit time spent interviewing Plaintiffs and reviewing the material they provided, writing the Chapter 93A demand letter, discussing the case

with the Connecticut Attorney General's office, and drafting and filing the initial complaint (Dkt. No. 124-3 at 44-47). Because those tasks constituted direct preparation for the litigation, this case is distinguishable from *Beninati v. Borghi,* SUCV20121985BLS2, SUCV20131772BLS2, 2017 WL 6940927, at *1 (Mass. Sup. Ct. Oct. 10, 2017), and the similar cases upon which Defendants rely.

I recommend rejecting Defendants' contention that Mr. Deutsch spent an excessive amount of time preparing motions for an extension of time to serve the summonses (2.9 hours) and for alternative service (7 hours) (Dkt. No. 133 at 12) because Defendants caused Plaintiffs to incur these expenses.[4] Gabor and Monica deliberately evaded service of process in Connecticut and Arizona (Dkt. Nos. 6, 7, 8, 9, 10). *See Swenson*, 2020 WL 2402835 at *2-4; *see also Allstate Ins. Co.,* 594 F. Supp. 3d at 227. Plaintiffs should be compensated for the **9.9 hours** that Mr. Deutsch spent completing those tasks. Plaintiffs should also be compensated for the **1.3 hours** Mr. Deutsch spent on June 18 and 19, 2020 preparing and filing the motion for entry of default when the Smatkos failed to answer the complaint (Dkt. No. 12; Dkt. No. 124-3 at 39).

Defendants failed to retain essential business records and produce them in discovery. This conduct justifies the time Plaintiffs' counsel spent to obtain this information, which was 13.7 hours preparing a motion to compel and 2.8 hours in August and September 2022 issuing a subpoena to Defendants' e-mail and web services provider (Dkt. No. 54; Dkt. No. 111 at 3-6; Dkt. No. 124-3 at 8-10, 12). I recommend compensating Plaintiffs for those **16.5 hours**.

There appears to be no dispute that Plaintiffs should be compensated for the **14.6 hours** Mr. Deutsch spent from October 1 to October 14, 2020, researching and drafting Plaintiffs'

[4] Defendants did not indicate how they calculated the time spent on the specific tasks that they proposed to exclude or discount. Some of the court's calculations vary slightly from Defendants' calculations of attorney time spent on specific tasks.

opposition to Gabor's and Monica's motions to dismiss (Dkt. No. 37; Dkt. No. 124-3 at 36; Dkt. No. 133 at 9, 12).

Mr. Deutsch spent 10.6 hours from August 17 to September 2, 2020 researching, drafting, and filing the first amended complaint, which added the UFTA and the RICO Act claims against Gabor and Monica (Dkt. No. 29; Dkt. No. 124-3 at 37). He spent 18.6 hours from December 10, 2021 to April 12, 2022 requesting leave to further amend the first amended complaint and researching, drafting, and filing the second amended complaint, which added Kevin to the conspiracy, UFTA, and RICO Act counts and added limited liability companies to the UFTA count (Dkt. Nos. 53, 63; Dkt. No. 124-3 at 19, 22, 25-28). *See Alfonso v. Aufiero,* 66 F. Supp. 2d 183, 193 (D. Mass. 1999) (awarding fees for time spent on a motion to amend the complaint to add a claim). Although the 18.6 hours is substantial, Mr. Deutsch did not record any time for drafting the TAC, which was the operative complaint at the time of the settlement. Accordingly, I recommend compensating Plaintiffs for the time their attorney spent preparing the first and second amended complaints, a total of **29.2 hours**.

Defendants argue that Plaintiffs should not be compensated for most of the 5.2 hours Plaintiffs' counsel spent from October 24 to November 21, 2022 negotiating and finalizing the settlement agreement because the entries were block billed or excessive (Dkt. No. 124-3 at 2-6; Dkt. No. 133-6 at 2; Dkt. No. 133-8 at 2). The entries in the billing records sufficiently describe the time that Mr. Deutsch spent on the tasks that were related to the settlement and, in this court's view, the **5.2 hours** was reasonably expended. *See Pérez-Sosa*, 22 F.4th at 322 ("The justification for paying an attorney for time reasonably spent in settlement negotiations is strong.").

Although Defendants do not dispute that Plaintiffs are entitled to compensation for preparation of the fee application, *see Brewster v. Dukakis,* 3 F.3d 488, 494 (1st Cir. 1993), they ask the court to reduce by half what they claim are the 11.6 hours Mr. Deutsch spent on November 22 and 30 and December 1, 2022 researching and preparing the fee petition (Dkt. No. 133 at 16-17). Mr. Deutsch's records show that he spent 4.7 hours working on the fee application on those dates (Dkt. No. 124-3 at 2). In addition to drafting the fee petition and his declaration, Mr. Deutsch obtained declarations from a forensic accountant and four attorneys (Dkt. Nos. 124-6 through 124-10). Because **4.7 hours** is a reasonable amount of time for this work, I recommend compensating Plaintiffs for all of this time.

*b. Non-compensable time*

I recommend excluding the time attributable to Plaintiffs' abandoned efforts to identify members of a putative class and seek class certification.

Plaintiffs' counsel spent 8.3 hours drafting two discovery motions that were deemed moot (Dkt. Nos. 17, 24, 38, 41; Dkt. No. 124-3 at 35, 39). When Defendants failed to produce business records, Mr. Deutsch spent 13.9 hours issuing subpoenas to various entities including 9.5 hours subpoenaing records from the Massachusetts and Arizona Better Business Bureaus and on-line retailers Amazon, and WalMart on 11/17/20 (1.5 hours), 7/21/21 (1.4 hours), 7/30/21 (0.3 hour), 8/6/21 (0.2 hour), 8/9/21 (2.1 hours), 8/10/21 (0.6 hour), 8/25/21 (0.4 hour), 10/14/21 (0.4 hour), 9/22/22 (0.5 hour), and 10/14/22 (2.1 hours); 2.8 hours subpoenaing records from interstate shippers (Roadrunner, Diamond Line Delivery, Southeast Freight, and A. Dui Pile) on 8/6/21 (0.2 hour), 8/9/21 (0.5 hour), 8/13/21 (0.4 hour), and 12/15/21 (1.7 hours); and 1.6 hours subpoenaing records from internet payment servicers Klarna and PayPal on 6/30/22 (1.3 hours) and 7/27/22 (0.3 hour).

Plaintiffs also should not be compensated for the 20.1 hours that Mr. Deutsch spent preparing the unsuccessful class certification motion on the following dates: 3/8/22 (1.2 hours); 3/10/22 (2 hours); 3/11/22 (2.8 hours); 3/13/22 (0.9 hour); 3/14/22 (2.6 hours); 3/29/22 (1.1 hours); 3/30/22 (0.8 hour); 3/31/22 (3.3 hours); 4/1/22 (2.9 hours); 4/4/22 (2.4 hours); and 4/5/22 (0.1 hour) (Dkt. Nos. 60, 116). In addition, Mr. Deutsch spent 24.3 hours between February 10 and June 9, 2022 preparing and filing a motion for injunctive relief related to preserving assets for class relief that the court denied (Dkt. Nos. 76, 112, 116; Dkt. No. 124-3 at 17-18, 22).

I further recommend excluding time that was unproductive or unnecessary although not related to the class action aspect of the litigation, including time spent on state district court litigation.

Plaintiffs are not entitled to recover for 3.4 hours of time spent in November and December 2019, before the instant matter was filed, discussing a retainer agreement (0.5 hour on 11/14/19); docketing a motion on a state court calendar (0.2 hour on 11/22/19); preparing a state court transfer motion (0.6 hour on 12/9/19); preparing a motion and attending a hearing in state court (1.3 hours on 12/12/19); and reviewing and responding to e-mail messages from Gabor (0.8 hour on 12/16/19 and 12/17/19) (Dkt. No. 124-3 at 44-46). Plaintiffs also should not recover for the 13.1 hours spent on an unsuccessful mediation (Dkt. No. 124-3 at 16, 17, 19), *see Alfonso*, 66 F. Supp. 2d at 193; for 2.3 hours, billed on May 24, 25, and 31 and September 7, 2022, for researching entities that were never named as defendants (Dkt. No. 124-3 at 10, 17-18, 34 [*see* 1/26/22 & 5/24/22 entries]); for 18.7 hours in August 22 and September 2022 preparing a motion for sanctions on which the court never ruled because Plaintiffs accepted the offers for judgment (Dkt. No. 111; Dkt. No. 124-3 at 8, 9, 12), or for 6.5 hours billed on November 4, 15, and 16, 2022 spent preparing a fourth amended complaint that was never filed (Dkt. No. 124-3 at 3, 5).

c. *Adjusting for the disparity between the time spent and the result achieved*

"The adversity and complexity of litigation can propel the amount of reasonably necessary legal work beyond a proportionate relationship with an ultimate damages verdict." *A.C. Vaccaro, Inc. v. Vaccaro,* 955 N.E.2d 299, 306 (Mass. App. Ct. 2011). Defendants evaded service, failed to maintain or produce basic business records, and attempted to hide assets from Plaintiffs after they sent the Chapter 93A demand letter. *See Gonpo*, 2021 WL 1795601, at *3 ("'defendants may not complain that fees for work made necessary by their own litigation tactics are excessive in light of the result achieved.'") (quoting *Juan Chen v. Wen Jing Huang,* No. 1684CV00756-BLS2, 2016 WL 4729307, at *6 (Mass. Super. Ct. Sept. 7, 2016)). However, Plaintiffs' failure to represent a class, notwithstanding the substantial amount of time devoted to that effort, weighs against compensating Plaintiffs for all of the hours remaining after the non-compensable time is deducted from the hours for which Plaintiffs seek compensation. *See Hensley,* 461 U.S. at 440 ("A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole."). Plaintiffs' contention that time spent seeking to develop a class provided the incentive for Defendants to settle the case is unpersuasive and, in any event, a defendant's motive is not a factor a court considers when assessing the reasonableness of a fee award (Dkt. No. 134 at 3-4). *See, e.g., RFF Family P'ship LP,* 2015 WL 1472253, at *2; *Linthicum v. Archambault,* 398 N.E.2d 482, 488 (Mass. 1979), *overruled in part on other grounds by Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp.,* 640 N.E.2d 1101 (Mass. 1994). To address the disparity between the result achieved and the amount of fees Plaintiffs seek to recover, I recommend a 50% reduction in time that the court has not allocated as compensable or non-compensable time because the time served dual purposes. After deducting compensable hours and non-compensable time from the 409.5 hours for which

Plaintiffs seek to recover, 194.9 hours remain. That includes time spent on discovery, including depositions, and general litigation tasks, including serving subpoenas on non-parties such as financial institutions. *See Bogan v. City of Boston,* 489 F.3d 417, 428-29 (1st Cir. 2007) (a downward adjustment for partial success is appropriate only where successful and unsuccessful claims are not interconnected). Because the compensable time attributable to the individual claims and the non-compensable time attributable to the unsuccessful litigation are almost equal, this court recommends discounting the remaining 194.9 hours by 50%, resulting in compensation for **97.45 hours** of attorney time. In this court's view, that reduction reasonably addresses the disparity between the results achieved and the requested fees. *See Twin Fires Inv., LLC,* 837 N.E.2d at 1139 (the fee award reflected the proportion of the time spent on the successful claims versus the unsuccessful claims); *see also McDermott,* 53 F. Supp. 3d at 323-24 (65% reduction of the lodestar in a consumer protection case was warranted to reflect plaintiff's "limited relief" and the disproportion between the fees requested and the results obtained).

*d. Fee calculation*

In summary, there are **104 hours** of compensable time (22.6 + 9.9 + 1.3 + 16.5 +14.6 + 29.2 + 5.2 + 4.7 = 104) and 110.6 hours of non-compensable time (8.3 + 13.9 + 20.1 + 24.3 + 3.4 + 13.1 + 2.3 + 18.7 + 6.5 = 110.6). The court has further recommended that Plaintiffs recover for **97.45 hours** of attorney time that contributed to their individual recoveries at the same time that it would have benefitted class members had the case proceeded as a class action.

The court recommends that Plaintiffs be awarded **201.45 hours** at $400 per hour for a fee award of **$80,580.** *See Joyce v. Town of Dennis,* Civil Action No. 08-10277-NMG, 2014 WL 585455, at *1, *4 (D. Mass. Feb. 14, 2014) (the plaintiff was awarded $87,287 in attorney's fees after recovering $15,000 in compensatory damages in a discrimination case); *Walsh v. Boston*

*Univ.,* 661 F. Supp. 2d 91, 115-17 (D. Mass. 2009) (the plaintiff was awarded $72,124.50 in attorney's fees after recovering $15,000 in damages in an employment case).

B. Costs

Plaintiffs request costs totaling $146,320.71 for a forensic accountant's services, expenses related to mediation, serving third-party subpoenas, filing fees and service of process, depositions, and a private investigator’s services. Defendants do not dispute that Plaintiffs are entitled to costs of **$3,713.57** related to mediation and **$1,169.74** for the filing fees and service of process ($1,186.98) less the costs associated with the Springfield District Court lawsuits ($17.24). Defendants contend that these are the only costs for which Plaintiffs are entitled to reimbursement.

1. Forensic Accountant's Expert Witness Fees

The principal item in contention with respect to costs is the bill for forensic accounting. Plaintiffs hired Verdolino & Lowey, P.C., to analyze transactions in twenty-seven bank accounts (Dkt. No. 124-2 ¶¶ 44, 45; Dkt. No. 124-6 ¶ 8). In addition to showing that Kevin received money from the Defendants' businesses, the records showed Defendants' sales proceeds, use of those proceeds to purchase real estate, and transfers between their business entities (Dkt. No. 124-2 ¶ 43(k), (*l*), (r), (s), (t), (u), (v), (w)). Plaintiffs submitted eight pages of detailed billing records for the accountants showing dates and describing the services rendered, identifying the staff members who performed the services, the time spent, and the employee's hourly rate. The records reflect total fees of $119,669 (Dkt. No. 124-6 at 7-14).[5]

[5] In view of the detailed records, Defendants' contention that the accountants' time is inadequately documented is unpersuasive (Dkt. No. 124-6 at 7-14; Dkt. No. 133 at 36-38 & n.11).

When a court awards costs under a statute that "simply refer[s] to 'costs,'" as does the RICO Act, the court is "limited to awarding the costs specified in §§ 1821 and 1920," *Rimini St., Inc. v. Oracle USA, Inc.*, 139 S. Ct. 873, 877 (2019), which do not include expert witness fees beyond a statutory per diem amount. *See Freeman v. Package Mach. Co.,* 865 F.2d 1331, 1346 (1st Cir. 1988). On the other hand, "[Chapter] 93A provides express statutory authority to award expert witness fees to a successful plaintiff." *Waldman v. American Honda Motor Co., Inc.,* 597 N.E.2d 404, 407 (Mass. 1992). *See Linthicum,* 398 N.E.2d at 488 (in a Chapter 93A case, "reasonable expert witness fees should normally be recoverable . . . in order to vindicate the policies of the act."). "[T]he award of such fees is discretionary." *Charles River Constr. Co. v. Kirksey*, 480 N.E.2d 315, 322 (Mass. App. Ct. 1985).

Defendants contend that Plaintiffs cannot recover the forensic accountants' fees as costs because their work was only relevant to the UFTA claim (Dkt. No. 133 at 29-33). Because the facts underpinning the Chapter 93A and UFTA claims are "inextricably intertwined," the court has discretion to award expert witness fees under Chapter 93A. *See Freeman,* 865 F.2d at 1350. As previously discussed, the Chapter 93A and UFTA claims were based on Defendants' scheme to defraud Plaintiffs who were the victims of Defendants' unconscionable business practices in violation of Chapter 93A and their related attempts to conceal assets. *See Tomasella v. Nestlé USA, Inc.*, 364 F. Supp. 3d 26, 32 (D. Mass. 2019), *aff'd,* 962 F.3d 60 (1st Cir. 2020); Mass. Gen. Laws ch. 109A, §§ 2, 5(a) & (b)(4). Thus, Plaintiffs are entitled to recover some portion of the experts' fees as costs under Chapter 93A.

"'However, the reasonable costs that can be awarded . . . are only those related to plaintiffs' successful claims.'" *Alfonso,* 66 F. Supp. 2d at 201 (alteration in original) (quoting *Culebras Enters. Corp. v. Rivera-Rios,* 846 F.2d 94, 103 (1st Cir. 1988)). The primary purpose

of the accountants' work was to identify assets that could satisfy a damages award in a successful class action. *See, e.g.,* Dkt. No. 124-2 ¶ 43(k), (*l*), (m), (v), (w)). That Plaintiffs' decision to incur substantial forensic accountant fees before a class was certified was premature and unreasonable is shown by their decision to abandon their pursuit of class relief. Defendants suggest that a 95% reduction would appropriately reflect the lack of success in certifying a class and the disproportion between the expenditure and Plaintiffs' recovery (Dkt. No. 133 at 34). The court agrees that a substantial reduction is warranted and recommends reducing the forensic accountant fees and awarding **$24,000**, which is approximately 20% of the amount requested, as appropriately reflecting the forensic accountants' contribution to Plaintiffs' (limited) success in prosecuting this case.

2. Third party subpoenas

Plaintiffs seek $5,811.56 for serving third party subpoenas.[6] In disputing that entire amount, Defendants argue that Plaintiffs' expense records for 1/20/22 ($2,385) and 1/28/22 ($240) lack detail (Dkt. No. 124-4 at 4; Dkt. No. 133 at 25). Although not identified by Defendants, the record entry on 8/25/21 ($1,185) also falls into that category (Dkt. No. 124-4 at 4). Defendants further dispute the $933.94 cost of Plaintiffs' subpoenas to banks on 3/22/22 ($96), 4/11/22 ($162.25), 5/25/22 ($255), 7/14/22 ($24.80) 8/5/22 ($95), and 9/22/22 ($300.89), on the ground that these costs were unrelated to the RICO Act or Chapter 93A claims (124-4 at 2, 3). Defendants also ask the court to exclude the $1,067.62 balance, representing the cost of

[6] Plaintiffs requested $6,031.09 in costs associated with the service of subpoenas (Dkt. No. 124-2 ¶ 49(b)). However, the itemized costs show the following expenditures for a total of $5,811.56: $1,185 on 8/25/21; $2,385 on 1/20/22; $240 on 1/28/22; $96 on 4/11/22; $162.25 on 3/22/22; $255 on 5/25/22; $24.80 on 7/14/22; $917.62 on 8/5/22; $300.89 on 9/22/22; $95 on 10/11/22; and $150 on 10/28/22 (Dkt. No. 124-4).

issuing subpoenas to entities from which Plaintiffs sought information concerning individuals who purchased defective goods from Defendants because these costs are attributable to Plaintiffs' unsuccessful attempt to certify a class (Dkt. No. 133 at 25-27).

I recommend excluding the costs of serving subpoenas on unidentified recipients ($3,810), *see Weinberger v. Great N. Nekoosa Corp.,* 925 F.2d 518, 527 n.11 (1st Cir. 1991), and on the entities from whom Plaintiffs sought information about potential class members ($1,067.62). Because Defendants' argument that Plaintiffs are only entitled to recover the expenses directly related to the RICO Act and Chapter 93A claims is unpersuasive as a matter of law, this court recommends that Plaintiffs be awarded **$933.94** in costs for the subpoenas issued to financial institutions, as these subpoenas resulted in evidence relevant to Plaintiffs' individual claims.

3. Deposition costs

Plaintiffs request $3,494.80 for deposition transcripts and related costs.[7] Defendants complain that the description of the July 28, 2022 expense of $437.50 for the Norcanpro no-show deposition is so vague that the court cannot determine whether the costs are reasonable or necessary, and were related to the RICO Act and Chapter 93A claims. The description of "[d]eposition transcript and reporter expense-no show" is adequate (Dkt. No. 124-4 at 3). While Defendants argue that the $2,832.30 spent on Kevin's and Monica's depositions should be excluded because they had nothing to do with the operation of Mobilityless, communications with Plaintiffs, or the purchase, sale, delivery, return, or refund of any products (Dkt. No. 133 at

[7] Plaintiffs calculated the cost of deposition transcripts as $3,269.80 (Dkt. No. 124-2 ¶ 49(d)). However, their list of costs shows the following expenditures: $437.50 on 7/28/22 (no show); $1,122.30 on 11/17/22 (Kevin's transcript); $1,515.20 on 11/23/22 (Monica's transcript); $194.80 on 12/5/22 (Swenson's transcript); and $225.00 on 12/5/22 (fee for late cancellation of Gabor's deposition) (Dkt. No. 124-4). The total is $3,494.80.

39), Defendants ignore that Plaintiffs recovered damages on all claims against all parties, including Monica and Kevin. *See Haddad Motor Grp., Inc.*, 2009 WL 10695247, at *22 (Chapter 93A permits compensation for fees associated with depositions). The $225 charge for cancelling Gabor's deposition is likewise compensable. Consequently, this court recommends allowing Plaintiffs to recover **$3,494.80** for costs related to depositions.

4. Investigator's fees

Finally, Plaintiffs seek to recover $12,444.80 paid to the Airde Group for investigative services on December 8, 2021, and March 14 and November 3, 2022 (Dkt. No. 124-4 at 2, 4). Because Plaintiffs fail to describe the services or explain why they incurred these fees, the court cannot determine whether these fees are compensable as costs or are related to claims on which Plaintiffs were successful. For these reasons, this item should be disallowed. *See Alfonso,* 66 F. Supp. 2d at 201 (declining to award costs for private investigator's charges where plaintiff had not adequately described the services he performed); *Haddad Motor Grp., Inc.,* 2009 WL 10695247, at *22 (excluding costs for which there was no description).

In sum, the undersigned recommends awarding costs in the amount of **$33, 312.05** ($3,713.57 + $1,169.74 + $24,000 + $933.94 + $3,494.80 = $33,312.05).

III. CONCLUSION

Based on the court's review of the billing records and the parties' submissions, I recommend that the court award Plaintiffs a total of $113,892.05 in attorney's fees and costs. [8]

[8] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court within fourteen (14) days of service of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to

Dated: July 21, 2023

/s/ Katherine A. Robertson
KATHERINE A. ROBERTSON
United States Magistrate Judge

---

this Report and Recommendation. *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980). *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.